**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Charles Roger NESBITT (94–2018); Nelson Porto (94–2029); Tracy Edmond (94–2032); Lonnie McKissic, Jr. (94–2083), Defendants–Appellants.**

**Nos. 94–2018, 94–2029, 94–2032 and 94–2083.**

United States Court of Appeals, Sixth Circuit.

Submitted Feb. 6, 1996.

Decided July 22, 1996.

Mark V. Courtade, Asst. U.S. Atty., Daniel Y. Mekaru (briefed in Nos. 94–2018, 94–2032) (argued and briefed in Nos. 94–2029, 94–2083), Office of the U.S. Attorney for the W.D. of Michigan, Grand Rapids, MI, for U.S.

Jeffrey J. O'Hara (briefed), Grand Rapids, MI, for Charles Roger Nesbitt.

Stuart R. Mishkin (argued and briefed), Miami, FL, for Nelson Porto.

Kenneth P. Tableman (briefed), Lansing, MI, for Tracy Edmond.

Tracy Edmond, Lansing, MI, pro se.

Paul L. Mitchell (argued and briefed), Grand Rapids, MI, for Lonnie McKissic.

Before: KENNEDY and SUHRHEINRICH, Circuit Judges; GILMORE, District Judge.*

GILMORE, District Judge.

In a jury trial before the Honorable Robert H. Bell of the Western District of Michigan, defendants were tried and convicted of conspiring to distribute over five kilograms of cocaine in violation of 21 U.S.C. §§ 846 and 841(a). In this consolidated appeal, four of the defendants raise challenges to their convictions and sentences.[1] We shall affirm

---

* The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Two additional defendants, Percy Edmond, Case No. 94–2020 and Damon Costa, Case No. 94–2018, also appealed their convictions and sentences, which were consolidated with these appeals. However, Percy Edmond withdrew his appeal following oral argument in the case, and Damon Costa's appeal has been held in abeyance

the convictions of all defendants, and affirm the sentences of all but one defendant.

## I.

Defendants-appellants, Charles Nesbitt, Tracy Edmond, Nelson Porto, and Lonnie McKissic, were indicted in the Western District of Michigan and charged with involvement in a conspiracy to distribute over 5 kilograms of cocaine in violation of 21 U.S.C. §§ 846, 841(a) and 841(b)(1)(A). First, Second, and Third Superseding Indictments were returned on December 28, 1993, March 10, 1994, and April 7, 1994. The indictments alleged that cocaine was being shipped from Florida to the cities of Lansing, Kalamazoo, Battle Creek and Grand Rapids in the Western District of Michigan, as well as the City of Detroit. The Third Superseding Indictment also charged defendant Lonnie McKissic with two counts of money laundering, in violation of 18 U.S.C. § 1956(a).

The facts set forth at trial revealed that Nicolas Gaviria and his wife, Maria Patricia Gaviria, residents of Miami, Florida, would secure large amounts of cocaine and provide it to co-conspirators for the purpose of shipment and resale in the Western District of Michigan. Initially, the cocaine was provided to defendant Nelson Porto and Juan Carlos Sanchez. Porto and Sanchez would then oversee its delivery to couriers who would transport it to drug dealers in Michigan, including defendants Tracy Edmond and Lonnie McKissic. Defendant Nesbitt was one of the couriers.

On June 10, 1993, defendant Charles Roger Nesbitt entered into a written plea agreement to Count 1 of the Third Superseding Indictment for conspiracy to possess with intent to distribute more than 5 kilograms of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a). On August 18, 1994, Nesbitt moved for a downward departure based on a serious medical condition. The motion was granted and his base offense level was reduced two levels, resulting in a sentence of 168 months imprisonment entered on August 31, 1994.

Immediately prior to jury selection on June 20, 1994, defendant Lonnie McKissic pending a ruling on a Rule 35 motion filed by the plead guilty to Count 2 of the Third Superseding Indictment for money laundering in violation of 18 U.S.C. § 1956(a). On September 9, 1994, McKissic was sentenced to 114 months imprisonment.

Trial commenced before a jury on June 20, 1994 and concluded on June 29, 1994. The jury returned a guilty verdict against defendants Tracy Edmond and Nelson Porto. Tracy Edmond was sentenced to 210 months in prison and Nelson Porto was sentenced to 180 months in prison.

These defendants filed timely appeals to their convictions and/or sentences.

### A. *CHARLES NESBITT*

Charles Nesbitt entered into a written plea agreement on June 10, 1994, in which he pled guilty to Count 1 of the Third Superseding Indictment, conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a). Prior to sentencing, Nesbitt filed a memorandum requesting a downward departure pursuant to U.S.S.G. §§ 5H1.4 and 5K1.1. He argued that his sentence should be reduced, both because he suffered from a seriously infirm physical condition and because he had cooperated with the government. Judge Bell granted a two-point downward departure because of Nesbitt's physical condition and another two-point reduction for substantial assistance. Defendant Nesbitt was then sentenced to 168 months imprisonment, five years supervised release, and a special assessment.

In this appeal, defendant Nesbitt argues that the district court erred in refusing to award a greater downward departure under U.S.S.G. § 5H1.4 for his serious physical condition, and under U.S.S.G. § 5K1.1 for the substantial assistance he provided to the government.

This court has repeatedly held that it has no jurisdiction over appeals contesting the extent of a downward departure as such appeals do not fall under 18 U.S.C. § 3742. *See e.g., United States v. Gregory*, 932 F.2d 1167, 1169 (6th Cir.1991); *United States v. Draper*, 888 F.2d 1100, 1105 (6th Cir.1989). government.

Because defendant Nesbitt has failed to assert a proper basis for appeal of his sentence pursuant to 18 U.S.C. § 3742, this court shall dismiss the appeal for lack of jurisdiction and **AFFIRM** defendant Nesbitt's conviction and sentence.

## B. *TRACY EDMOND*

Defendant Tracy Edmond raises two issues on appeal: (1) that evidence showing his frequent purchases of cocaine was not sufficient to support his conviction for conspiracy; and (2) that the court erred in attributing 139 kilograms of cocaine to him at sentencing.

On the first issue, defendant Tracy Edmond asserts that the evidence at trial was insufficient to support the finding that he agreed with the Gavirias and others to distribute cocaine as part of a joint activity. Instead, defendant contends that the evidence merely showed that a buyer-seller relationship existed between himself and the Gavirias.

First, we are not required to entertain defendant's challenge of the sufficiency of the evidence on appeal because defendant failed to move for judgment of acquittal under Fed.R.Crim.P. 29 at the close of the government's case-in-chief. This failure constitutes a waiver of any objection to the sufficiency of the evidence. *United States v. Dandy,* 998 F.2d 1344, 1356 (6th Cir.1993), *cert. denied,* 510 U.S. 1163, 114 S.Ct. 1188, 127 L.Ed.2d 538 (1994); *United States v. Williams,* 940 F.2d 176, 180 (6th Cir.), *cert. denied,* 502 U.S. 1016, 112 S.Ct. 666, 116 L.Ed.2d 757 (1991). Furthermore, defendant never raised the "buyer-seller" defense at trial or requested a jury instruction on that defense. Hence, defendant has waived his right to raise the issue on appeal. *United States v. Hatchett,* 918 F.2d 631, 643 (6th Cir.1990), *cert. denied,* 501 U.S. 1223, 111 S.Ct. 2839, 115 L.Ed.2d 1008 (1991).

Under these circumstances, we will not reverse absent a miscarriage of justice. *United States v. Morrow,* 977 F.2d 222, 230 (6th Cir.1992), *cert. denied,* 508 U.S. 975, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993). We find none. Once the existence of a conspiracy is shown, only slight evidence is necessary to connect a defendant with it. *See United States v. Hitow,* 889 F.2d 1573, 1577 (6th Cir.1989); *United States v. Betancourt,* 838 F.2d 168, 174 (6th Cir.), *cert. denied,* 486 U.S. 1013, 108 S.Ct. 1748, 100 L.Ed.2d 210 (1988). The record in this case establishes sufficient indicia of defendant's involvement in the conspiracy. Witness Troy Lei, a courier for the conspiracy, named Tracy Edmond as a member of the conspiracy. Another courier, David Frost, testified that he delivered five kilograms of cocaine to a man named Tracy, but was not paid until a later time. We find that the trust involved in this kind of delayed payment arrangement suggests more than a buyer-seller relationship between Tracy Edmond and the Gavirias.

In addition to this evidence linking Tracy Edmond to the conspiracy, the evidence presented at trial showing advanced planning and multiple transactions involving large quantities of illegal drugs is also evidence that Tracy Edmond's involvement was not confined to a buyer-seller relationship. *See Direct Sales Co. v. United States,* 319 U.S. 703, 711, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674 (1943) (dangerous substance and large quantities of sales may furnish conclusive evidence of involvement in a conspiracy). For these reasons, we shall **AFFIRM** Tracy's Edmond's conviction.

Tracy Edmond's attack on his sentence also must fail. He argues that the district court erred in attributing 139 kilograms of cocaine to him for sentencing purposes. *See* U.S.S.G. § 2D1.1(c)(4). Findings of fact relating to sentencing, including the quantity of drugs attributed to a defendant, are reviewed by this court under a clearly erroneous standard. *See e.g., United States v. Hamilton,* 929 F.2d 1126, 1130 (6th Cir. 1991); *United States v. Walton,* 908 F.2d 1289, 1300–01 (6th Cir.), *cert. denied,* 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990).

Tracy Edmond's presentence report recommended that between 150 to 500 kilograms of cocaine be attributed to him at sentencing, for a base offense level of 38. In his objections to the presentence report and at the sentencing hearing, defendant argued

that he should only be held accountable for 139 kilograms· of cocaine. Deciding to "err on the side of caution," Judge Bell chose to accept the uncontested amount of 139 kilograms and ·applied a base offense level of 36 (at least 50 kilograms but less than 150 kilograms of cocaine). Because defendant expressly agreed that he should be held accountable for 139 kilograms, he cannot now challenge the court's factual finding on this issue. Hence, we shall **AFFIRM** Tracy Edmond's sentence.

### C. *LONNIE MCKISSIC*

Defendant Lonnie McKissic pled guilty to one count of money laundering in violation of 18 U.S.C. § 1956 and was sentenced to 114 months imprisonment. In his appeal, McKissic asserts that the district court erred in enhancing his sentence pursuant to U.S.S.G. § 3C1.1 for obstruction of justice. Section 3C1.1 of the Sentencing Guidelines provides for a two-level enhancement "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede the administration of justice during the investigation, prosecution or sentencing of the instant offense." (emphasis added). The Application Notes to this section provide the following examples of obstructive conduct: "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so." U.S.S.G. § 3C1.1, Comment n. 3(a). The notes also refer to "committing, suborning, or attempting to suborn perjury." *Id.*, Comment n. 3(b).

■ A district court's ruling that a defendant obstructed justice is a finding of fact which will be disturbed on appeal only if clearly erroneous. *United States v. August,* 984 F.2d 705, 714 (6th Cir.1992), *cert. denied,* 510 U.S. 854, 114 S.Ct. 158, 126 L.Ed.2d 119 (1993). We review legal questions involving interpretation of the Sentencing Guidelines de novo. *United States v. Smith,* 39 F.3d 119, 122 (6th Cir.1994).

Count 2 of the Third Superseding Indictment alleged that defendant McKissic laundered money in violation of 18 U.S.C. § 1956 when he used illegal drug proceeds to purchase a Mercedes Benz automobile on Febru-

ary 13, 1993, and had the automobile titled in the name of his girlfriend, Damita Jo–Ellen Walker. Count 3 charged McKissic with using illegal drug proceeds to purchase a different Mercedes Benz on July 19 and 20, 1993, which was then registered in the name of his aunt, Mattie Mae Lilly. McKissic pled guilty to Count 2 in return for dismissal of all other charges against him.

The presentence report on McKissic concluded that his actions of encouraging Ms. Lilly to file a claim for the automobile after civil forfeiture proceedings were instituted and lying in a deposition taken in relation to the Lilly civil forfeiture constituted obstruction of justice. The report also indicated that Ms. Walker claimed to have been instructed by McKissic not to cooperate with the government in the criminal investigation. Ms. Walker alleged that in numerous telephone conversations with McKissic, he instructed her to "cover-up" information that would be damaging to him and to offer the government nothing.

In granting the two-point enhancement over defendant's objection, the district court stated:

> Clearly the testimony of Damita Walker indicated that the defendant in fact intended at the time that the vehicles in this question here were subject to being seized that the defendant gave her direction as to what to say at a civil deposition. . . . It is the instant offense, that is, the money laundering offense involving drug proceeds being used to purchase automobiles in another's name, that is the subject matter here. And this Court is satisfied both in the civil deposition and in what Damita Walker told this Court under oath—no evidence to the contrary—that in fact the defendant did in fact obstruct justice and that two points should be added for that.

In this appeal, defendant contends that the court erred in relying on his alleged perjury in the civil forfeiture deposition, which was related to Count 3 of the Third Superseding Indictment and not to the specific count of conviction, Count 2 of the Third Superseding Indictment. Defendant further contends that the district court erroneously believed

that the perjury involved Count 2 and Damita Walker, and not Count 3 and Ms. Lilly. Finally, defendant asserts that Ms. Walker's vague statements regarding defendant's alleged directions that she not cooperate with the government are insufficient to support the enhancement of his sentence for obstruction of justice.

In support of his arguments, defendant McKissic cites *United States v. Horry,* 49 F.3d 1178 (6th Cir.1995), for the proposition that "the obstruction must occur solely with respect to the offense of conviction." *Id.* at 1180–81. However, *Horry* is distinguishable from this case. The defendant in *Horry* was convicted for wire fraud, and the district court enhanced her sentenced based on trial testimony that she had used a false name when writing to her husband, who was in prison in Ohio, in order to assist him in avoiding detection by law enforcement officials. As a result of her actions, defendant's husband was able to become a federal fugitive. This court reversed the obstruction of justice enhancement on the grounds that defendant's husband was not at all involved in the fraud for which she was convicted. Hence, any obstruction of justice she committed was wholly unrelated to her offense of conviction. *Id.*

■ In this case, defendant McKissic only pled guilty to Count 2 of the Third Superseding Indictment for money laundering involving a Mercedes Benz purchased in Damita Walker's name. Thus, he contends that under *Horry,* his acts of lying at a civil forfeiture deposition and instructing Ms. Lilly to lie about the source of a car registered in her name were acts of obstructing justice unrelated to his offense of conviction. Based on these facts, we find that *Horry* does not control in this case because the evidence of obstruction of justice by defendant McKissic is sufficiently related to the offense of conviction to support enhancement of his sentence under § 3C1.1.

Here, defendant McKissic was indicted on two money laundering counts involving both Ms. Walker and Ms. Lilly, and his laundering of drug proceeds through the purchase of two Mercedes Benz automobiles were related acts, as both were connected to the drug conspiracy for which McKissic was indicted. Moreover, defendant's actions in relation to Count 3 occurred during the same investigation that eventually led to his plea to Count 2. Hence, unlike the *Horry* case, McKissic's behavior in relation to the Lilly charge should not be viewed as collateral conduct irrelevant to the "instant offense." Instead, this conduct was related to the "instant offense" in that it was intended to impede the same government investigation that eventually resulted in McKissic's plea bargain and conviction. Hence, pursuant to the language of U.S.S.G. § 3C1.1, we conclude that these acts occurred "during the investigation … of the instant offense" and were properly considered by the district court to enhance McKissic's sentence for obstruction of justice.

We also note that this result is consistent with another Sixth Circuit decision involving U.S.S.G. § 3C1.1, based on facts similar to this matter. In *United States v. Crousore,* 1 F.3d 382, 384 (6th Cir.1993), the defendant pled guilty to one count of possession of marijuana and one count of being a felon in possession of a firearm. At sentencing, defendant perjuriously denied his involvement in an additional offense. Later, when the government sought to enhance his sentence based on this perjury, defendant claimed that he did not lie about the offenses to which he pled guilty, and therefore his perjury could not support an enhancement for obstruction of justice under § 3C1.1.

This court rejected that argument, explaining: "the test is not whether the false statement was about the actual crime charged, but whether it was made during the investigation, prosecution, or sentencing of the 'instant offense.'" *Id.* at 385. This reasoning also applies here, as McKissic's perjury and instructions to Ms. Lilly that she lie during the civil forfeiture investigations impeded the government's overall investigation against him. Hence, the district court did not err in considering these collateral, but highly related acts, to support a two-point enhancement. Defendant McKissic's sentence is **AFFIRMED.**

## D. *NELSON PORTO*

Defendant Nelson Porto raises two claims of error in this appeal. First, defendant Porto challenges the sufficiency of the evidence at trial proving his involvement in the conspiracy. Second, Porto attacks his sentence, claiming that the district court erred in attributing 26 kilograms of cocaine to him for sentencing purposes.

### 1. *Sufficiency of the Evidence*

▮ Like defendant Tracy Edmond, defendant Porto failed to make a proper Rule 29 motion at trial, and in fact, affirmatively declined to make such a motion. Therefore, he waived the right to challenge the sufficiency of the evidence on appeal. *Dandy,* 998 F.2d at 1356. Furthermore, there is ample evidence connecting him to the conspiracy. Troy Lei, who worked as a courier to advance the conspiracy, testified that he knew Porto to be a member of the conspiracy. Another witness, Juan Carlos Sanchez, testified that he delivered cocaine on behalf of defendant Porto and Nicolas Gaviria. Accordingly, there is no miscarriage of justice and defendant's conviction shall be **AFFIRMED.**

### 2. *Quantity Attributed at Sentencing*

Findings of fact relating to sentencing, including the quantity of drugs attributed to a defendant, are reviewed by this court under a clearly erroneous standard. *See e.g., Hamilton,* 929 F.2d at 1130; *Walton,* 908 F.2d at 1300–01.

▮ In determining a defendant's relevant conduct for a conspiracy charge, the Sentencing Guidelines instruct the court to determine the drug amount "reasonably foreseeable" to the defendant. U.S.S.G. § 1B1.3(a)(1). This relevant conduct is deemed to be within the scope of his agreement in the conspiracy. *Id.,* Comment, n. 2; *United States v. Jenkins,* 4 F.3d 1338, 1346 (6th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1547, 128 L.Ed.2d 197 (1994). "Proof of relevant conduct must be supported by some minimal indicium of reliability beyond mere allegation." *United States v. Zimmer,* 14 F.3d 286, 290 (6th Cir.1994)(internal quotation omitted).

▮ At sentencing, the government argued that defendant should be held accountable for sales of cocaine to Jorge Cantillo in late December 1989 and early 1990. Julian Cantillo, Jorge's cousin, testified that he introduced defendant Porto to his cousin in late 1989 or early 1990 in Miami, Florida, because defendant was interested in supplying drugs to Jorge. A meeting was set up the following week, and about a week after that, Jorge gave $60,000 cash to Julian to give to Porto to buy cocaine. Julian testified that in early, 1990, he saw defendant prepare three kilograms for Jorge, which was later delivered. Julian further testified that over the next two weeks, three more transactions occurred, each involving between three and five kilograms of cocaine. At sentencing, the government argued that Julian Cantillo's testimony linked defendant Porto to over twenty kilograms of cocaine.

In attacking his sentence, Porto argues that most of the cocaine attributed to him came from deliveries made in late December, 1989 and early January, 1990. Defendant asserts that the December, 1989 cocaine was outside the time frame of the indictment, which alleges that the conspiracy began "in or about January of 1990." Defendant also argues that the district court erred in failing to make specific factual findings establishing that the 1989 and 1990 deliveries were part of the conspiracy for which he was convicted. Here, defendant Porto relies on the testimony of Nicholas Gaviria, who stated that he did not begin providing Porto with cocaine until "the end of '90 ... into early 1991," and the testimony of Sanchez, who testified that Porto took over the Cantillo account in late 1991.

At sentencing, the district court found that one hundred kilograms were reasonably attributable to defendant and concluded that 26 kilograms was a "conservative estimate" of relevant conduct attributable to defendant under the Sentencing Guidelines. In supporting the 26 kilogram figure, the court stated:

In this particular matter clearly Juan Cantillo's testimony concerning a number of

transactions in which the Jorge Cantillo account in Grand Rapids was dealt with by Nelson Porto by this Court's calculation is 26 kilos that were involved in this matter.

However, the court recognized a discrepancy between the dates set forth in the indictment and the evidence supporting relevant conduct of 26 kilograms. The court noted:

> The evidence also demonstrated, rather troublingly, that Mr. Porto's connection, if that is the proper term to use here, and I think it is, with cocaine and with cocaine users and with cocaine suppliers was outside merely the window here that was talked about in the indictment. He's not on trial for that, but this Court can't help but conclude that ... trafficking in these drugs was easy and quick money and in fact facilitated Mr. Nelson Porto's lifestyle.

After reviewing the record relating to defendant's sentencing, we conclude that the district court erred in attributing 26 kilograms of cocaine to defendant without resolving the factual issues raised by defendant.

First, even if Julian Cantillo's testimony is credited, it only established between twelve and eighteen kilograms of cocaine. In sentencing defendant, the district court failed to adequately explain where the remaining eight to fourteen kilograms came from. Further, the court did not resolve the factual dispute as to whether this conduct occurred outside the time frame of the conspiracy. If the cocaine was not part of the conspiracy, then the court was required to determine whether it could nonetheless be considered "relevant conduct." *See* U.S.S.G. § 1B1.3(a); *id.* § 1B1.3 Comment, (backg'd).

Accordingly, we shall **REMAND** defendant Porto's case for resentencing.

For the reasons discussed above, the convictions and sentences of defendants Charles Roger Nesbitt, Tracy Edmond and Lonnie McKissic are all **AFFIRMED**. Defendant Nelson Porto's conviction is **AFFIRMED**, and his case is **REMANDED** for resentencing in accordance with this opinion.